This morning is Turkhan v. Lynch. Mr. Berg. Good morning, Your Honors. May it please the Court. My name is Roy L. S. Berg, and I represent the petitioner in this next matter before you, Mr. Shmael Isaac Turkhan. Your Honors, Mr. Turkhan has been trying to have a fair hearing in his case for more than 20 years. This is not an advertisement for the efficiency of our immigration system, Mr. Berg. It's really a very long time, as you say. Thank you, Your Honor. He was denied a fair hearing, Your Honor, in 1994 when his mother and sister were precluded from testifying because an Assyrian interpreter was not provided. Now, the Board notes that the applicant, basically the alien, has a right to an interpreter, but the Board comes to the conclusion, to the extent that this is properly before us at all, which it may not be, but if we indulge that it is for a minute, the Board says there is no right for the witnesses, and besides, we have the affidavits, and they find that to be enough. What's wrong with that? Your Honor, I believe you're referring to the Board's decision dismissing the first appeal? Mm-hmm. In that, I believe the Board dismissed the point completely. They said, well, you don't need an interpreter because you speak English, referring to Mr. Turkhan. They did not, and I don't believe they addressed the fact that his mother and sister weren't able to testify. At some point they do, though. At some point, I mean, this long saga, they comment that the affidavits, and of course the affidavits are there. Now, it wasn't great that the first lawyer dropped the ball on the interpreter, but the affidavits are there, and maybe it's the immigration judge. Again, I can't remember all these opinions, but somebody says they're pretty much boilerplate anyway. They really wouldn't have added all that much. And I believe also what Judge Vindicore did, and I believe it's acknowledged by the respondent in her brief, is that he gave them limited weight because they were not subject to being cross-examined. In other words, the people that had submitted the affidavits, the mother and sister, were not able to be cross-examined. I believe that's in Judge Fujimoto's decision. So let me jump ahead, though. Here we have a case where this all happens a long time ago. This is not a St. Cyr type case. He doesn't get his 212C relief out of an exercise of administrative discretion, not because it wasn't raised, not because of the kinds of things we had in St. Cyr. And from that point onward, both the immigration judges who've handled this case and the board have said, that's done. You know, that much is finished. And at this point, he has deferral of removal. So it's a little surprising to me that we're even here. Your Honor, we submit that his right to a fundamental fair hearing has been repeatedly denied. And we submit that when the case was reopened by the board in 2007, they did not restrict reopening, nor did they cite any basis for restricting reopening later in their second decision. Well, Judge Vinokur finds otherwise, and I would myself be very surprised in the absence of express language, which I can't find in the immigration laws, to see that there's some principle that the board has only one choice, which is to give a full remand to the immigration judges. This court all the time, you know, will give limited remand sometimes, will give full remand sometimes. It depends on the case. It depends on the issues. And Judge Vinokur finds, after the case moves over to him, that it's a limited remand, that some issues are closed. And I don't see where the board doesn't have that discretion. Well, they did not say that in their 2007 decision. And when it first came back to the court in front of Judge Bauer before he retired, he determined that the applicant could apply for 212C. But Judge Vinokur took another look at it and concludes otherwise. And Your Honor, if I can take a step back, I believe that St. Cyr does impact this case. If you look at when he was before this court in 97 and 99, what happened at that point in time? In 97, they were seeking review of both the initial decision and the initial motion to reopen. The motion to reopen was denied by the board because the board said, well, you can't get 212C because it's been eliminated by ADEPA. And so this court concluded, well, you can seek habeas review of your constitutional claims. That was in 97. In 98, this court issued Legare, basically cutting off habeas review. So in 99, he came back before this court. This court talked about the very rare and very unique circumstances and the power of the judiciary to correct bizarre circumstances. But this court concluded that though it did have jurisdiction then to address his constitutional claims, they were moot, as acknowledged by Respondent, because ADEPA had eliminated 212C. But we know then two years later, Justice Stevens in his opinion in St. Cyr said, well, wait a second. 212C is still available if you pled guilty before ADEPA. And that's exactly what he did. So I believe St. Cyr does directly impact his case. But he already had his 212C. I mean, so the context of St. Cyr, though, is of a person who did not have the opportunity to present the 212C argument because of the Anti-Terrorism and Infective Death Penalty Act as amended by IRA-IRA. But that's not Mr. Turkan's situation. And I do think you should also perhaps address the point that, first of all, the timeliness of this argument to begin with, and secondly, the fact that it was as a matter of discretion that he loses on 212C. And we've said that you don't have constitutional claims for the grant or denial of discretionary relief. Your Honor, he was arguing that he was denied a fundamentally fair hearing because his witnesses were not able to testify. And we submit that St. Cyr does apply because it cut him off from judicial review of the errors of the Board and Judge Fujimoto. And therefore, and also, this Court, we believe, can readdress what it had addressed previously. Because clearly now, 212C would have been available to him in 1999 had St. Cyr been decided before… But it was already a redo in 1999. That's the thing, right? Well, in 1997, this Court said, well, we don't have jurisdiction to address your constitutional claims. Take them to the district court in Habeas. He took them to the district court in Habeas. In the interim, Laguerre was decided, saying the district court didn't have jurisdiction to address these due process and constitutional claims. So he came back here and said, well, now we agree we have jurisdiction to address your claims. But guess what? There's no more 212C because of Odeppa. Then the Supreme Court said, well, wait a second, there is 212C. And it's been seeking reopening since then, Your Honor. So we respectfully submit, Your Honor, that in the interest of fundamental fairness, to look at this case in the eyes of the rule of lineage, there must be a path to correct this deprivation. This Court said twice before, no, you don't have a path, first because we don't have jurisdiction, and secondly because 212C is eliminated. But since then, 212C has been reinstated. So we believe that he should be able to have now review of those claims. Nonetheless, we believe that the Board did reopen. They did not restrict in their order in 2007 that they were saying we're only reopening for Kat. They said specifically we're reopening to address his claims, plural. How old is Mr. Turkan at this point? Can I ask him? He's 56. Your Honor, we would ask Your Honor to consider the very, very unique and very rare circumstances of this case. We submit, Your Honor, that he's been blocked from judicial review. Those blocks have been removed. We ask if you look at the totality of this case, the totality of the evidence, that he should be given a hearing in 212C. And we thank you very much, Your Honor. All right. Thank you. Ms. Lee? Good morning, Your Honors. May it please the Court. Sana Lee representing the Attorney General. Judge Wood, as you stated, the immigration judge had limited reopening upon the remand from the Board and correctly decided to limit the proceedings to just the application for Kat protection. And as So where do we have that clue that it was a limited remand? They do say something about changed country circumstances, which is a kind of backhanded way to talk about that. But normally, when you send it back, it actually reopens the whole removal process. Right, Your Honor. Well, the Board's decision remanding the case clearly stated that it was for claims related to changed country conditions in Iraq, which addressed the petitioner's claims that he feared returning to Iraq based on his religion. And so that's what the immigration judge heard on remand. And also, as the IJA stated, all of the prior decisions that the Board issued only reiterated over and over that they've already heard petitioner's arguments. So why is the government harping on this case? It seems such a strange one to be at the top of the priority list. I'm sorry, what do you mean by harping? As a matter of prosecutorial priorities and discretion, here is a person that everybody agrees has been fine ever since, you know, one misstep. And the original immigration judge appears to have misunderstood or misinterpreted his records from the prison. And so it's just odd to me that this is something the government, especially now that he's earned deferral of removal under CAT. I don't understand why we're here. Well, Your Honor, it's because petitioner has been filing motions to reopen and motions to reconsider multiple times over the years. So the Attorney General has no power to acquiesce to a discretionary review of 212C? I thought the Attorney General had quite plenary power in this area. Well, Your Honor, as you stated before, the petitioner has already had his chance to apply for 212C relief. I understand that, but are you telling me the Attorney General has no power today, if she wanted to, to take another look at a particular 212C discretionary denial? No, that's not what I'm saying right now. Because she does have that power, if she wanted to exercise it. The Attorney General could reopen the proceedings, but as the Board has stated before, he's had his chance to apply. No, I understand it. You're talking about something different, which is whether she's under a legal obligation to do that, and I'm at a kind of a different... I just want to make it clear that as a matter of her authority, she could do that. For some reason, the Board or you guys at the Justice Department have decided that you're going to push the legal side of this here. Let me take it a step forward from what Judge Wood has said. Is there any reason you couldn't ask him to look at it again? Well, I believe it's up to the Board's discretion. It's a suggestion of the Court that you ask him to look at it again. A suggestion. The Government has looked at it and has decided that it will not reopen his case at this time. He has a serious drug conviction. The Attorney General can, if she chooses, and this Court has asked informally, because why doesn't she? I think based on his past serious drug conviction... His one past serious conviction, which he apparently has never repeated, and he had a model record in the prison for that, and in light of this country, including the President on downs, change of policy with respect even to drug issues. There's a lot out there that makes it a strange exercise. I'm not telling you you can't do it, because I understand your role and our role, but it's a very strange exercise of prosecutorial discretion. Especially because it's 26 years since the conviction. I understand, Your Honor. Maybe 26 years. Right. I understand your point. But as Judge Wood stated, he does have deferral of cap at this time, and at this time there's no threat that he will be removed to Iraq. So he is legally allowed to stay in this country. But it appears that he wants his green card back. He lost his green card, but he is allowed to stay here and continue to have the protection of this country. Understood. Anything further? You have about a minute or two. Well, I just want to state that there is limited jurisdiction to review this case because of the conviction, and petitioners failed to state a meritorious legal claim or constitutional claim, and also the decision regarding ineffective assistance of counsel from the 90s is, like you said, that petition for review is untimely, and the court can't review that one. And if there's nothing else, Your Honors, the government will. All right. Thank you very much. Anything further, Mr. Berg? Please, Your Honor. Thank you very much. A couple of quick points. Perhaps Shakespeare said it best, that mercy is twice blessed, blessing both the recipient and the benefactor. You can't order the government to be merciful, but you can order them, as you're implying here, to look at this again. You can order them to be fair in how they make an intervention. I think Judge Bauer said suggest friendly. Excuse me? Suggest. I don't think he used the word order. And I apologize, Judge Bauer. Suggestion is always so much nicer than order. As always, Your Honor, I learn from you at this panel. So we would ask, Your Honors, that you direct and send this case back in order that the Attorney General give this man a hearing. He has not had a fundamentally fair hearing, we submit, from the beginning. He has not had judicial review because of the decisions of this court in 1997. It didn't have jurisdiction. And in 1999, it did have jurisdiction, but the case was moot. That was issued shortly before St. Cyr, about a year and a half before. We submit that he is statutorily eligible for the relief that he seeks. And we thank you very much, Your Honor. All right. Thank you. Thanks to both counsel. We'll take the case under advisement.